# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTNI COTTLE-BANKS, an individual, on behalf of herself and all others similarly situated,<br><br>                              Plaintiff,<br>        vs.<br><br><br>COX COMMUNICATIONS, INC., a Delaware corporation; DOES 1 through 100, inclusive,<br><br>                              Defendants. | CASE NO. 10cv2133-GPC(WVG)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND DENYING PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS**<br><br>**REDACTED**<br><br>[Dkt. No. 48.] |

Before the Court are Plaintiff's motion for class certification and motion for spoliation sanctions. Defendant filed oppositions and Plaintiff filed replies to these motions. The motions are submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1). Based on a review of the briefs, supporting documentation and applicable law, the Court DENIES Plaintiff's motion for class certification and DENIES Plaintiff's motion for spoliation sanctions.

## Procedural Background

On September 25, 2012, a status conference was held before District Judge Moskowitz after the case was transferred back to this Court from the District Court for the Western District of Oklahoma by order of the Judicial Panel on Multidistrict

Litigation. (Dkt. No. 31.) In preparation for the status hearing, the parties filed a joint status report as to the procedural history of the case. The Court finds the report helpful as to the background history of the case and recites it below.

**Procedural History**

Plaintiff Brittni Cottle-Banks filed this putative class action in California state court on September 13, 2010. Defendant Cox removed the case to this Court on October 13, 2010, and petitioned the JPML [Judicial Panel on Multidistrict Litigation] to transfer it to the Western District of Oklahoma as a related action to an MDL proceeding pending in that Court, In re Cox Enterprises, Inc. Set-Top Cable Television Antitrust Litigation, 09-ML-02048-C. The JPML granted Cox's petition and Cottle-Banks was transferred to the Western District of Oklahoma on February 4, 2011.

Plaintiffs in the MDL proceeding allege antitrust claims against Cox. Cottle-Banks, on the other hand, alleges consumer fraud claims against Cox. The transferor court denied the antitrust MDL plaintiffs' motion for certification of a nationwide class. In the wake of that denial, the transferor court issued an order suggesting that the JPML remand Cottle-Banks back to this Court for completion of all remaining pre-trial and trial proceedings, on the grounds that those proceedings could best be determined by this Court. Cottle-Banks thereafter returned to this Court on June 25, 2012.

**The Pleadings**

Cottle-Banks alleges that Cox has violated the negative-option-billing provision of the federal Cable Act by failing to disclose and obtain customers' consent to be charged for monthly rental fees associated with their cable set-top boxes. Cottle-Banks seeks relief for this alleged violation under California's Unfair Competition Law. In addition, Cottle-Banks seeks to certify a California class consisting of "[a]ll persons who, at any time from September 13, 2006, to the present ("Class Period"), paid a rental fee to [Cox] for the use of a cable television converter box and/or remote control device in connection with cable television service they received within the state of California." A motion to dismiss the complaint was granted in July 2011 giving plaintiff an opportunity to amend the complaint, which Cottle-Banks did on July 20, 2011. Defendant again filed a motion to dismiss the complaint which was denied on September 26, 2011, and Cox answered the amended complaint on October 18, 2011, denying all of Cottle-Banks's material allegations and denying that she has a right to recover either individually or on behalf of a class. There are two motions pending before the Court: (1) Cottle-Banks's motion for class certification, and (2) Cottle-Banks's motion for discovery sanctions.

The motion for class certification has been fully briefed since January 11, 2012, but no hearing was held in the transferor court. The motion was briefed using the law of the then forum Court. Plaintiff suggests that she resubmit her papers revised to reflect the law of class certification in a California-only class. Class certification will be

governed by the law of the Ninth Circuit, and a resubmission of the briefing will properly focus on the appropriate law where the case will be tried. If the Court agrees with plaintiff, then Cox also requests the right to revise its opposition.

As to the underlying class certification arguments, Cottle-Banks maintains that class certification is appropriate because Cox has a uniform policy or practice of failing to obtain customers' consent to be billed for set-top-box rental charges. Cox disputes this and argues that the evidence shows that its policy is exactly the opposite, namely, to disclose to customers that they will be billed for their set-top-box rentals as part of their cable packages. Cox argues that individual issues will predominate because each class member will have to prove that Cox violated its policy as to them.

The second pending motion is Cottle-Banks's motion for evidence-preclusion order and/or adverse inference charge based on Cox's failure to halt what it refers to as the routine overwriting of its customer call recordings before June 2011. This motion has been fully briefed since March 9, 2012. As with the class certification motion, this motion for sanctions was briefed using the law of the then forum Court. Plaintiff suggests that she resubmit her papers revised to focus on the law of the Ninth Circuit where the case will be tried. Again, if the Court agrees with plaintiff, Cox also requests the right to revise its opposition.

(Dkt. No. 25.)

After the status hearing, the Court denied without prejudice the pending motions for class certification and for evidence-preclusion because the briefing did not focus on the law of the Ninth Circuit and set a new briefing schedule for Plaintiff to refile the motions focusing on the appropriate law. (Dkt. No. 28.) On October 12, 2012, the case was transferred to the undersigned judge. (Dkt. No. 35.)

On November 7, 2012, Plaintiff filed a motion for class certification along with a motion for file documents under seal. (Dkt. Nos 36, 37, 38, 39.) Plaintiff also filed a motion for spoliation sanctions along with a motion to file documents under seal. (Dkt. Nos. 41, 42.) On November 26, 2012, the Court denied Plaintiff's motion to file documents under seal as Plaintiff had not shown good cause to file under seal the entirety of the motions. (Dkt. No. 45.) On December 4, 2012, Plaintiff filed a motion to file briefs in compliance with the Court's order filed on November 26, 2012, which the Court granted. (Dkt. Nos. 48, 59.) Attached to the motion were Plaintiff's redacted motion for class certification and motion for spoliation sanctions. (Dkt. No. 48.)

1    On December 5, 2012, Defendant filed a redacted opposition to Plaintiff's

2    motion for class certification and a redacted motion for spoliation sanctions.  (Dkt. No.

3    53, 54.)  The Court granted Defendant's motion to file under seal certain portions of

4    the opposition.  (Dkt. No. 58.)  On December 19, 2012, Plaintiff filed her reply to the

5    motion for spoliation sanctions and filed her redacted reply to the motion for class

6    certification.  (Dkt. Nos. 65, 66.)  The Court granted Plaintiff's motion to file under

7    seal her reply to the motion for class certification.  (Dkt. No. 67.)  On January 24, 2013,

8    Defendant filed an *ex parte* motion for leave to file surreply which the Court denied on

9    January 29, 2013.  (Dkt. Nos. 72, 75.)

10    On April 24, 2013, the Court issued an order directing the parties to file

11    supplemental letter briefs.  (Dkt. No. 77.)  On April 29, 2013, both parties filed their

12    letter briefs.  (Dkt. Nos. 78, 79.)

13                                    **Factual Background**

14    In the amended complaint, Plaintiff alleges one cause of action for unlawful

15    business practices under California Business & Professions Code section 17200, *et seq*.

16    ("UCL") for a violation of the Communications Act of 1934, 47 U.S.C. § 543(f).  (Dkt.

17    No. 48-3, Ex. U.)  She contends that the practice of charging customers for converter

18    boxes and/or remotes without first disclosing to them the equipment offered and the

19    prices to be charged and without first obtaining customer's affirmative acceptance of

20    the equipment and prices is a violation of 47 U.S.C. § 543(f).  (Id. ¶ 5.)

21    The amended complaint asserts one UCL claim on behalf of herself and a

22    proposed class defined as:

23        All persons who, at any time from September 13, 2006, to the present
          ("Class Period"), paid a rental fee to CCI [Cox] for the use of a cable
24        television converter box and/or remote control device in connection
          with cable television service they received within the state of
25        California (the 'Class').

26    (Id. ¶ 25.)

27    Defendant provides cable television, Internet, and phone services to consumers

28    in the three California communities of San Diego, Orange County and Santa Barbara

and a small portion of Los Angeles County.  Customers who order cable television services can order either analog or digital channels.  Analog service does not require a set-top box while customers wanting to order digital cable, high-definition programming ("HD"), and the ability to record programming with a digital video recorder ("DVR") require the use of a set-top box.  The set-top boxes give customers access to digital cable and other premium cable services.  Defendant offers four different types of set-top boxes: (1) a standard-definition box; (2) a standard-definition box with DVR capability; (3) a high-definition box; and (4) a high-definition box with DVR capability.  Subscribers pay a monthly fee for the cable services and a separate monthly rental fee for any set-top boxes.  These fees range from $5.25 to $5.50 per month for the standard boxes and about $7.25 to $7.50 per monthly for high-definition boxes.  Remote controls are included without an extra fee.  Customers order cable from Cox by either calling and speaking with a customer service representative ("CSR"), visiting one of Cox's fourteen retail locations in Southern California or ordering services on Cox's website.  The set-top boxes can either be installed by a technician for a fee or be self-installed by the customer.

Plaintiff Cottle-Banks states that around July 2006, she ordered cable service by placing a telephone call to Cox and elected to self-install the DVR box. (Dkt. No. 48-3 at 151.) She was mailed a self-installation kit which included a DVR, an additional set-top converter box, along with cables, instructions and two remote control devices. (Id. ¶ 2.) She was not told that Cox would send her an additional set-top converter box and charge her a separately monthly fee for it. (Id.) She and her husband hooked up the DVR and converter box.  (Id.)  She did not call Cox to ask why she had received the additional set-top box and "assumed that it was supposed to be installed." (Van Dusen Decl., Ex. 17 (Cottle-Banks Dep.) at 21:23-22:8; 23:7-10.)  She further assumed the second box was free, even though she knew that the DVR box had a separate monthly charge. (Id., Ex.17 (Cottle-Banks Dep.) at 23:18-24:9; 24:16-21.) Around February 2007, she moved and canceled cable service.  (Dkt. No. 48-3 at 151 ¶ 3.)

Between July 2006 and February 2007, Plaintiff paid her monthly bills electronically to Cox and did not ever download or review her monthly bill. (Id.) Around August 2007, she moved into a house and ordered cable television service by placing a telephone call to Cox. (Id. ¶ 4.) She again chose to "self install" the DVR and remote. (Id.) Again, she was not told that she would receive an additional set-top converter box and be charged a separate monthly fee for it. (Id.) A self-installation kit arrived which included a DVR and an additional set-top converter box along with cables, instructions and two remote control devices. (Id.) Her husband again hooked up the DVR box and the additional converter box. (Id.)

In February 2008, Plaintiff began reviewing her monthly bills in order to find ways to save money and noticed for the first time the rental fee of $5.25 on her monthly cable television bill for the additional converter box and remote. (Id. ¶ 5.) Prior to the assessment of the charge, Cox did not specifically disclose that she would be charged any amount for either the additional converter and remote and never secured a knowing acceptance of the converter box and remote and the prices to be charged for them. (Id.)

**Discussion**

**A.    Legal Standard for Class Certification**

Federal Rule of Civil Procedure 23 ("Rule 23") governs the certification of a class. See Fed. R. Civ. P. 23. A plaintiff seeking class certification must affirmatively show the class meets the requirements of Rule 23. Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). To obtain certification, a plaintiff bears the burden of proving that the class meets all four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy. Ellis v. Costco Wholesale Corp., 657 F.3d 970, 979-80 (9th Cir. 2011). If these prerequisites are met, the court must then decide whether the class action is maintainable under Rule 23(b). The Court exercises discretion in granting or denying a motion for class certification. Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003).

The party seeking to certify a class must demonstrate that it has met all four

requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).  <u>See</u> <u>Zinser v. Accufix Research Inst., Inc.</u>, 253 F.3d 1180, 1186 (9th Cir. 2011).  The moving party must provide allegations and supporting facts to satisfy these requirements.  <u>Doninger v. Pacific Northwest Bell, Inc.</u>, 564 F.2d 1304, 1309 (9th Cir. 1977).

The Court is required to perform a "rigorous analysis," which may require it "to probe behind the pleadings before coming to rest on the certification question." <u>Dukes</u>, 131 S. Ct. at 2551.  "'[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class.  More importantly, it is not correct to say a district court may consider the merits to the extent that they overlap with class certification issues; rather, a district court must consider the merits if they overlap with Rule 23(a) requirements." <u>Ellis</u>, 657 F.3d.at 981.  Nonetheless, the district court does not conduct a mini-trial to determine if the class "could actually prevail on the merits of their claims." <u>Id.</u> at 983 n.8; <u>United Steel, Paper & Forestry,</u> <u>Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v.</u> <u>ConocoPhillips Co.</u>, 593 F.3d 802, 808 (9th Cir. 2010) (citation omitted) (court may inquire into substance of case to apply the Rule 23 factors, however, "[t]he court may not go so far . . . as to judge the validity of these claims.").  "[I]n determining whether to certify the class, the district court is bound to take the substantive allegations of the complaint as true" but "also is required to consider the nature and range of proof necessary to establish those allegations." <u>In re Coordinated Pretrial Proceedings in</u> <u>Petroleum Prods. Antitrust Litig.</u>, 691 F.2d 1335, 1342 (9th Cir. 1982) (citing <u>Blackie</u> <u>v. Barrack</u>, 524 F.2d 891, 901 n. 7 (9th Cir. 1975)).

The Ninth Circuit has held that district courts are "required to resolve any factual disputes necessary to determine whether there was a common pattern and practice that could affect the class as a whole." <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 983 (9th Cir. 2011).  While the Ninth Circuit has not addressed whether Plaintiff must show by a preponderance of the evidence that the proposed class meets the factors of Rule

23, district courts have applied the preponderance of the evidence standard as to the Rule 23 requirements.[1]  See Faulk v. Sears Roebuck and Co., 11cv2159-YGR, 2013 WL 1703378, at *4 (N.D. Cal. Apr. 19, 2013) (applying preponderance of the evidence standard on Rule 23 requirements); Sobel v. Hertz Corp., 06cv545-LRH-RAM, 2013 WL 1182209, at *17 (D. Nev. Mar. 21, 2013); Quesada v. Banc of America Inv. Servs., Inc., 11cv1703YGR, 2013 WL 623288, at *4 (N.D. Cal. Feb. 19, 2013); Keegan v. American Honda Motor Co., Inc., 284 F.R.D. 504, 521 (C.D. Cal. June 12, 2012) (noting that Supreme Court and Ninth Circuit case has not determined whether the preponderance standard is used in class certification motions; however court applied preponderance of the evidence standard because it is the general standard of proof used in civil cases).  Therefore, this Court will also apply the preponderance of the evidence standard to determine whether Plaintiff has met the requirements under Rule 23.

### 1.    Rule 23(a)(2) - Commonality

Plaintiff asserts that the common question of law and fact is whether Cox's admittedly uniform, classwide practice, undertaken before it charges customers for equipment satisfies 47 U.S.C. § 543(f).  Defendant argues that Plaintiff has not established commonality because it had a uniform policy to inform customers about monthly equipment fees.

---

[1]

Other than stating that the evidence must be sufficient to withstand "rigorous analysis," the Supreme Court has not opined on whether any more precise standard for resolving disputed facts in this context is appropriate and, if so, what the standard should be. The circuit courts appear to be divided on the issue. See Gooch v. Life Investors Ins. Co. of America, 672 F.3d 402, 418 n. 8 (6th Cir. 2012). For example, the Sixth Circuit has suggested that "rigorous analysis" is a sufficient standard absent further direction from the Supreme Court. Id. The Third Circuit, however, has taken the position that the appropriate standard is "preponderance of the evidence." E.g., In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 320 (3d Cir. 2008). Likewise, the Eighth Circuit has spoken of the need to "resolve" factual disputes as required in assessing whether Rule 23's requirements for class certification have been met, which seems to imply a preponderance standard. E.g., Blades v. Monsanto Co., 400 F.3d at 567.

Pieloor v. Gate City Bank, No.1:12cv039, 2012 WL 4894683, at *9 (D.N.D. Oct. 15, 2012).  The Seventh Circuit has also held that the preponderance of the evidence applies to disputed facts under Rule 23.  Messner v. Northshore Univ. HealthSys., 669 F.3d 802, 810 (7th Cir. 2012).

Under Rule 23(a)(2), Plaintiff must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires the plaintiff to demonstrate that the "class members 'have suffered the same injury.'" <u>Dukes</u>, 131 S. Ct. at 2551. "That common contention . . . must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Id.</u> "What matters to class certification . . . is not the raising of common 'questions' . . . but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." <u>Id.</u> (emphasis in original) (citation omitted).

Plaintiff alleges an unlawful practice under California's UCL statute for a violation of 47 U.S.C. § 543(f) which provides:

> (f) Negative option billing prohibited
>
> A cable operator shall not charge a subscriber for any service or equipment that the subscriber has not affirmatively requested by name. For purposes of this subsection, a subscriber's failure to refuse a cable operator's proposal to provide such service or equipment shall not be deemed to be an affirmative request for such service or equipment.

47 U.S.C. § 543(f). On March 1, 2011, the Federal Communications Commission ("FCC") issued a "Declaratory Ruling" to provide guidance on the interpretation of the language of § 543(f). (Dkt. No. 53-23.) When the case was before the Western District of Oklahoma, that court adopted the FCC test in an order granting Defendant's motion to dismiss:

> First, the cable operators must specifically disclose the equipment offered and the prices to be charged. Second, the customer must respond affirmatively, either orally or in writing, accepting the offer of the equipment and prices.

(Dkt. No. 48-3 at 84.) For purposes of this motion, the parties do not dispute the FCC's interpretation of 47 U.S.C. § 543(f).

According to Plaintiff, the common question is whether Cox's admittedly

uniform, classwide practice, undertaken before it charges customers for equipment satisfies § 543(f).  Plaintiff's common questions requires the Court to resolve the underlying claims which the Court is not to do on a motion for class certification.  See Ellis, 657 F.3d at 983 n. 8 (common question was whether there was a general policy of discrimination,  not whether Defendant was in fact discriminating against women).

In this case, the common question is whether Defendant had a common practice of charging customers for converter boxes and/or remotes without first disclosing to them the equipment offered and the prices to be charged and without first obtaining customer's affirmative acceptance of the equipment and prices.  Plaintiff and Defendant agree that Cox had a uniform, standardized practice; however, the parties differ as to the specific practice.

Plaintiff presents four arguments in support of commonality.  First, she argues that there is nothing in the CSRs' training manual that instructs them to inform customers about monthly equipment charges.  As background, Plaintiff states that CSRs are trained to utilize written "scripts" when taking customer orders for cable service on the telephone. ███████████████████████████████████████████████████████████████████████████████████████████████████████ (Dkt. No. 48-3, Morosoff Decl., Ex. J., Foy Depo,. at 49:21-50:15 (under SEAL).) ███████████████████████████ (Id., Morosoff Decl., Ex. K, Ellis Depo. at 22:21-22:5 (under SEAL).) ███████████████████████████████████████████████████████ (Id. at 21:10-21; 22:21-22:5 (under SEAL).) ███████████████████████████ (Id. at 28:11-14 (under SEAL).) ███████████████████████████████████████████ (Id., Ex. L - Bates COX CB 001703 (under

[10cv2133-GPC(WVG)]

S         E         A         L         .         )

███████████████████████████████████████

▮ ▮ ▮ ▮ ▮ ▮ ▮ ▮ ▮ ▮ ▮ ▮ ▮ ▮ ▮ ▮ ▮ ▮ ▮ ▮ ▮ ▮   ( I d . )

███████████████████████████████████████

████████████ (Id., Ex. M at 1847-1873 (under SEAL).)

Second, Plaintiff presents the declaration of a former Cox CSR, Regina Santos, to support her position on commonality. (Dkt. No. 48-3, Morosoff Decl., Ex. N.) Santos states that she was not trained to inform customers of separate equipment costs unless customers asked them about it and she was trained to only inform customers of the total amount of the monthly charges during the sales calls. (Id. ¶ 7.) She was encouraged by supervisors to omit information about additional equipment charges unless asked by the customer. (Id. ¶ 3.) She worked for Cox from 2001 through 2007 as both a telephone CSR at the call center and the retail store in San Diego. (Id. ¶ 2.)

████████████████████████████████

███████████████████████████████████████

████████████ (Id., Morosoff Decl., Ex. P, Bates CCISTB112581 (under SEAL).) The script demonstrates that the CSRs are not trained or required to inform customers of equipment rental fees.

Lastly, as to the customer call recordings produced during discovery, Plaintiff states that out of the 200 recordings, less than ten were relevant sales calls and concludes that "those few recordings contradict Defendant's official description of its policy." ███████████████████████████████████

██████████████████████████████████ (Dkt. No. 48-3, Morosoff Decl., Exs. Q & R (under SEAL)).[2]

─────────────

[2]Plaintiff also presents evidence that installers are not trained to inform customers of the monthly costs of their converter boxes and does not provide the customer with a paper work order. Defendant state that a customer's interaction with a field technician is another opportunity for the customer to learn about and consent to the equipment and services selected. While interaction with the installer provides another opportunity to learn about the equipment and charges, the crux of Plaintiff's

1

2

3

4 ████████████████████████████████ (Dkt. No. 53-7, Van Dusen Decl., Ex. 6, Ellis Decl. ¶¶

5 2, 3 (under SEAL).) ████████████████████████████████████████████████████

6

7

8 █████████████ (Id. ¶ 7 (under SEAL).)█████████████████████████ (Id. ¶

9 4 (under SEAL).)

10

11 ██████████████████████████████ (Id. ¶ 6 (under SEAL).)

12

13

14 ███████████████ (Id. (under SEAL).)

15

16

17 █████████ (Id. ¶ 7 (under SEAL).)

18

19 ████████████████████████████████████████████████ (Id. (under

20 SEAL).)

21

22 ████████████████████████████████████████████████████████████ (Id.

23 ¶ 9 (under SEAL).) ███████████████████████████

24 ████████████████████████████ (Id. ¶¶ 10, 11 (under SEAL).) ██████

25

26 █████████████████████████████ (Id., Exs. D, E to Ellis Decl.

27 _____

28 case is the initial ordering of the equipment when the customers contacts Cox by
telephone.

1 │ ( u n d e r S E A L ) . )

2 │ ████████████████████████████████████████████████

3 │ ████████████████████████████████████████████████

4 │ ████████(Dkt. No. 53-8, Van Dusen Decl., Ex. 7, Ellis Depo. at 156:6-15 (under

5 │ S E A L ) . )

6 │ ████████████████████████████████████████████████

7 │ ████████████████████████████████████████████████

8 │ ████████████████[3] (Id., Ellis Depo. at 131:1-9; 133:12-134:1;

9 │ 125:7-126:16 (under SEAL).)

10 │ ████████████████████████████████████████

11 │ ████████████████████████████████████(Id. ¶ 12 (under

12 │ SEAL).)   At her deposition, Ellis testified that CSRs are instructed to tell customers

13 │ the price of everything they talk about including equipment and this issue is discussed

14 │ on a "daily basis."  (Dkt. No. 53-8, Van Dusen Decl., Ex. 7, Ellis Depo. at 69:21-70:2;

15 │ 105:8-23;  107:8-108:6;  110:1-9.) ████████████████████

16 │ ████████████████████████████████████████████████

17 │ ████████████████(Id., Ex. 6, Ellis Decl., Ex. 1 at COX CB 1787-1803

18 │ (under SEAL)).  Further, Defendant produced seven call recordings that show that Cox

19 │ CSRs disclose the total monthly price of a cable package including the monthly fee for

20 │ ─────────────────

21 │ [3] ████████████████████████████████████████████

22 │ ████████████████████████████████████████████████

23 │ ████████████████████████████████████████████████

24 │ ████████████████████████████████████████████████

25 │ ████████████████████████████████████████████████

26 │ ████████████████████████████████████████████████

27 │ █  █  █  █  █  █  █  █  █

28 │ ████████████████████████████████████████████████

the set-top-box.  (Dkt. No. 55.)

Moreover, Cox argues that CSRs do not use "scripts" to discuss set-top boxes as shown on the call recordings produced.  The recordings are highly variable and depend on the subscriber's knowledge, needs and preferences. ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████(Dkt. No. 48-3, Morosoff Decl., Exs. F, G & H (under SEAL).)

Lastly, according to Cox's Direct of Sales in San Diego, Cox's quality-control personnel monitor the CSRs by reviewing their phone calls to ensure that CSRs follow Cox's disclosure policies.  (Van Dusen Decl., Ex. 13, Blattler Decl. ¶ 3.)  The quality-control employee listens to make sure the CSRs provide complete and accurate information about set-top boxes.  (Id. ¶ 3.)  CSRs who fail to follow Cox's disclosure policy are subject to retraining and possibly disciplined for non-compliance.  (Id. ¶ 4.)

Based on the facts presented to the Court, it finds that Plaintiff has not shown by a preponderance of the evidence that Cox had a uniform policy or practice of charging customers for converter boxes and/or remotes without first disclosing to them the equipment offered and the prices to be charged and without first obtaining customer's affirmative acceptance of the equipment and prices.  Plaintiff's supporting evidence was not supportive or persuasive. ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ (Dkt. No. 53, Van Dusen Decl., Ex. 6, Ellis Depo., Ex. 1 at COXCB001788 (under SEAL)).

In addition, the declaration of a former Cox CSR employee who was employed from 2001-2006, outside the time period for the class, is not convincing. ███████████ ████████████████████████████████████████████████████████████████████

1   ██████████████████████████ (Dkt. No. 53-15, Van Dusen Decl., Ex.

2   14, Kavanagh Decl. ¶ 2 (under SEAL).) ████████████████ (<u>Id.</u> ¶ 4.)

3   ██████████████████████████████████████████

4   ██████████████████████████████████████████

5   ████████████████ (<u>Id.</u> at 23.) ██████████████████

6   ██████████████████████████████████████████

7   ██████████████████████ (<u>Id.</u> at 13.)  The Court concludes that

8   Santos' declaration is not supportive evidence as she was mostly employed during a

9   time outside the class period, and during the overlap with the class period, she was

10  subject to discipline which raises questions as to her reliability.

11      While Plaintiff argues that the CSRs utilize scripts which do not require the

12  CSRs to inform customers about monthly equipment charges, Plaintiff has not

13  demonstrated that the CSRs are required or regularly use these scripts.  As Defendant

14  argues, the call recordings show that the conversations between CSRs and customers

15  vary.  ████████████████████████████████████

16  ██████████████████████████████████████████

17  ████ (Dkt. No. 37-2, Morosoff Decl., Ex. B, Langner Depo. at 93:5-94:2 (under

18  SEAL).)

19      Plaintiff states that although 200 recordings were produced, less than ten turned

20  out to be relevant and those few recording contradict Defendant's policy.  However,

21  Plaintiff only cites to two call recordings where the CSRs did not provide the monthly

22  equipment charges to the customer.  In contrast, out of the same recordings, Defendant

23  provided seven examples of the actual recordings that demonstrate that CSRs do

24  disclose the monthly fee for set-top boxes to the customers.  Based on the sampling of

25  call recordings, significantly more CSRs  disclosed equipment and its fees for set-top

26  boxes than those that did not.  Plaintiff's evidence merely establishes that certain CSRs

27  deviate from Defendant's uniform policy and practice of informing customers of

28  monthly charges.    Plaintiff's evidence does not establish a uniform policy.

Consequently, Plaintiff has failed to show a common core of facts or a shared legal issue that affects all class members with respect to this claim.

Absent a uniform policy, the only means to determine whether customers were informed of the monthly charges and accepted them would necessarily involve a customer-by-customer inquiry. This would create a scenario of thousands of mini-trials which would not conserve judicial resources. All of the above demonstrates that a class action would not be a superior procedure to address the common questions before the Court.

### 2. Ascertainability

"As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." Mazur v. eBay Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009) (since class would include non-harmed auction winners, this portion of the class definition was imprecise and overbroad). "A class definition should be precise, objective, and presently ascertainable." Id. at 567 (citation omitted). The class definition must be sufficiently definite so that its members can be ascertained by reference to objective criteria. Whiteway v. FedEx Kinko's Office and Print Servs., Inc., No. C 05-2320 SBA, 2006 WL 2642528, at *3 (N.D. Cal. 2006). "[A] class will be found to exist if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." O'Connor v. Boeing North American, Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998).

There are three different ways customers can order cable service through Cox. Customers can make a telephone call to Cox, visit a retail store or use Cox's website. In her papers, Plaintiff does not address whether a class is appropriate for any ordering that occurs through Defendant's website.

In opposition, Defendant provides the declaration of Ryland Madison, Director of Marketing for Cox. (Dkt. No. 60-10, Van Dusen Decl., Ex. 15, Madison Decl. ¶ 2.) When a customer orders Cox cable online, she selects the programming package that

she is interested in.  (Id. ¶ 3.)  After that, she must affirmatively choose the type of converter she wants.  (Id.)  The online ordering portal lists the types of converters that Cox offers as well as their monthly charges, so that when the customer selects her desired converter, she will know exactly how much she will be charged for it each month.  (Id.)  The customer also has the opportunity to add converters to her order for additional televisions in her home.  (Id.)  Defendant also provides the online-ordering screen shots which itemizes all the selected services and equipment and informs the customer of the cost of any selected set-top boxes multiple times before completing the order.  (Id., Ex. 1, COXCB1628-40.)  Based on what is before the Court, customers who order online through Cox's website are informed about equipment and monthly fees and customers must affirmatively accept these charges in order to complete the ordering process.  Neither party addresses purchases made at Cox 's retail stores.

Based on the class definition purported by Plaintiff, the class is overbroad and imprecise as it includes individuals who signed up online where the challenged information was conveyed and affirmatively accepted by the customer, and those individuals who purchased equipment at the retail stores.  The Court concludes that the class is not ascertainable.

### 3.    Rule 23(a)(1), (a)(3), (a)(4)

Based on our conclusion that Plaintiff has failed to satisfy the commonality question, it is not necessary to determine whether Plaintiff has satisfied the numerosity, typicality and adequacy requirements of Rule 23(a).  See Dukes, 131 S. Ct. at 2551 n. 5 ("In light of our disposition of the commonality question, however, it is unnecessary to resolve whether respondents have satisfied the typicality and adequate-representation requirements of Rule 23(a)."); Aburto v. Verizon California, Inc., No. CV 11-03683-ODW(VBKx), 2012 WL 10381, at *6 n. 2 (C.D. Cal. Jan. 3, 2012) (because Plaintiff failed to establish commonality, the Court need not address the other three requirements under Rule 23(a).).

### 4.    Rule 23(b)

[10cv2133-GPC(WVG) ]

Because the Court find that the requirements of Rule 23(a) are not met, we need not reach the question of whether the proposed class satisfy the requirements of Rule 23(b).  See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186, amended, 273 F.3d 1266 (9th Cir. 2001) (noting that under Rule 23, the plaintiff must show that all four of the requirements of Rule 23(a) are met and then at least one requirement of Rule 23(b)); see Hanlon v. Chrysler Corp, 150 F.3d 1011, 1019 (9th Cir. 1998) (Rule 23(a) is the threshold analysis for determining whether class certification is appropriate).

**B.      Motion for Spoliation Sanctions**

In conjunction with her motion for class certification, Plaintiff filed a motion for spoliation sanctions requesting that the Court issue an order that:

> 1) There shall be an adverse inference operative in all proceedings in this case, that all CSR call recordings destroyed by Defendant after service of the original complaint in this case would have evinced a common practice by Defendant of violation 47 U.S.C. § 543(f) by not disclosing equipment and corresponding charges during telephone calls with customers ordering cable service; and/or
>
> 2) Defendant shall be precluded from introducing evidence that its CSRs complied with 47 U.S.C. § 543(f) before June of 2011.

(Dkt. No. 48-4, P's Motion for Spoliation Sanctions at 21.)  Defendant opposes.

### Background

Plaintiff filed her original complaint on September 13, 2010 in the San Diego Superior Court.  (Dkt. No. 1.)  The case was removed to this Court on October 13, 2010.  (Id.)  The original complaint requested certification of a class defined as:

> All persons who, at any time from September 13, 2006, to the present, paid a rental fee to CCI for the use of a cable television converter box and/or remote control device which they did not affirmatively request by name in connection with cable television service they received within the state of California.

(Dkt. No. 1, Compl. ¶ 25.)  She alleged that Defendant's acts constituted an unlawful practice of charging class members rental fees for use of a cable converter box and/or remote control device which those class members did not affirmatively request by name.  (Id. ¶ 44.)

The case was transferred to the MDL panel on February 4, 2011. (Dkt. No. 15.) The case proceeded in the Western District of Oklahoma until June 25, 2012 when it was remanded back by the Panel. (Dkt. No. 19.) While the case was in Oklahoma, the Court granted Defendant's motion to dismiss the complaint. On July 20, 2011, Plaintiff filed an amended class action complaint alleging restitution and injunctive relief for unlawful business practices pursuant to California Business and Professions Code section 17200. (Dkt. No. 48-3, Morosoff Decl., Ex. U.)  In the amended complaint, Plaintiff alleges that Cox did not specifically disclose to its customers in California, either orally or in writing, that they would receive a set-top box for an additional monthly fee and that each customer did not affirmatively accept, either orally or in writing, the set-top box and/or the price charged.  (Id. ¶ 1.)  The class definition was amended to:

> All persons who, at any time from September 13, 2006, to the present ("Class Period"), paid a rental fee to CCI [Cox] for the use of a cable television converter box and/or remote control device in connection with cable television service they received within the state of California (the 'Class').

(Id. ¶ 25.)

Cox records some telephone calls between CSRs and customers which are used for quality control and training purposes. (Dkt. No. 54-11, Van Dusen Decl., Ex. 10, Williams Decl. ¶ 4.)  Defendant uses the software platform Qfiniti, distributed by the Autonomy Corporation, to record these telephone calls. (Id. ¶ 5.) Cable sales calls are recorded as well as telephone, wireless, and Internet sales calls on the Qfiniti system. (Id.) Cox is unable to separate cable sales calls from telephone, wireless, and Internet sales calls except to listen to the recordings themselves.  (Id.)  A typical day's recordings of California calls occupy 20 Gigabytes.  (Id.) The call recordings saved in the Qfiniti platform are automatically overwritten every 45 days, because of the limited capacity of the servers on which the recordings are stored.  (Id.) Cox does not have a business need for calls older than 45 days, as older calls are not useful for quality control or training purposes.  (Id.)  In order to retain call recordings on the Observe

servers for longer than 45 days, Cox would need to invest in additional servers to store the massive amount of data, and such an investment is unnecessary, as the older calls serve no business purpose.  (Id.)

Every night, Cox creates backup tapes of its production servers to use for disaster recovery purposes.  (Id. ¶ 6.)  The audio files from the Observe servers are placed on these backup tapes.  (Id.)  The metadata associated with the audio files, which is housed on a separate server that runs Microsoft's SQL Server, is backed up separately from the audio files.  (Id.)  Cox typically maintains its production backup tapes for a period of 30 days, but beginning in June 2011, Cox maintained the backup tapes of its call recordings pursuant to a litigation hold.  (Id.)  Cox has never had to restore the audio recordings from the backup tapes.  (Id.)

██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████ (Dkt. No. 42-1, Morosoff Decl., Ex. A, Wise Depo. at 48:05-49:7 (████████████).) ██████████████████████████████████████████████ (Id., Wise Depo. at 50:2-4 (████████).).)

On June 14, 2011, Plaintiff served on Defendant her First Request for the Production of Documents and specifically requested the production of all "recordings of telephone calls with customers and/or potential customers." (Dkt. No. 48-5, Request No. 6.)  In an email between counsel for the parties, Plaintiff's counsel noted that Defendant had not taken steps to preserve the customer call recordings but continued to routinely tape over these recordings after about 30 days.  (Id., Ex. C.)  Defendant's counsel stated that the call recordings are on a constant 45 day cycle and that Cottle-Bank's call recording in 2008 was long gone before the case was filed.  Defense counsel also noted that the calls would not be discoverable under the Communications Act.

As a result, Defendant began preserving the backup tapes containing call

1   recordings in early June 2011 when Plaintiff notified Defendant that she would seek

2   call recordings in discovery.  Therefore, backup tapes dating to about April 2011 have

3   been preserved.

4        On September 2, 2011, Plaintiff filed a motion to compel the production of call

5   recordings by Defendant.  On October 27, 2011, the Oklahoma district court partially

6   granted Plaintiff's motion to compel and instructed Cox to produce a random selection

7   of 200 calls with the private consumer information redacted.  (Dkt. No. 48-5, Morosoff

8   Decl., Ex. J.)   On November 23, 2011, Defendant produced 200 customer call

9   recordings to Plaintiff.  (Id., Ex. F.)  On January 16, 2012, Defendant produced an

10  additional 80 calls.  (Id., Ex. G.)

11       After receiving the call recordings, on December 16, 2011, Plaintiff filed another

12  motion seeking Defendant to comply with the Court order dated October 27, 2011 and

13  the production of 400 additional call recordings.  (Dkt. No. 54-18, Van Dusen Decl.,

14  Ex. 17.)   On January 23, 2012, Defendant withdrew her motion to compel and filed a

15  motion seeking spoliation sanctions on February 10, 2012.  (Id., Ex. 18.)

16                                    **Discussion**

17       District courts may impose sanctions under their inherent power "to manage their

18  own affairs so as to achieve the orderly and expeditious disposition of cases."  In re

19  Napster, Inc. Copyright Litigation, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006) (citing

20  Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)).  Spoliation is "the destruction or

21  significant alteration of evidence, or the failure to preserve property for another's use

22  as evidence, in pending or future litigation." Kearney v. Foley & Lardner, LLP, 590

23  F.3d 638, 649 (9th Cir. 2009); Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th

24  Cir. 2001) (Spoliation "refers to the destruction or material alteration of evidence or to

25  the failure to preserve property for another's use as evidence in pending or reasonably

26  foreseeable litigation.")

27       Courts may sanctions parties for spoliation of evidence by instructing the jury

28  that it may draw an inference adverse to the party or witness responsible for destroying

the evidence; by excluding witness testimony proffered by the party responsible for destroying the evidence and based on the destroyed evidence; and dismissing the claim of the party responsible for destroying the evidence.  In re Napster, 462 F. Supp. 2d at 1066 (citations omitted).   Plaintiff seeks an adverse interference, or in the alternative, evidence preclusion.

**A.     Adverse Interference**

The Ninth Circuit has approved the use of adverse inferences as a sanction for spoliation of evidence but has not provided a standard for determining when such sanctions are warranted.  Apple, Inc. v. Samsung Electronics Co., Ltd.., 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012).  An adverse inference is an instruction to the trier of fact that "evidence made unavailable by a party was unfavorable to that party." Nursing Home Pension Fund v. Oracle Corp., 254 F.R.D. 559, 563 (N.D. Cal. 2008).  District courts in California have adopted the Second Circuit's three-part test which provides,

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

Id. at 889-90 (citing Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002)).

A spoliation sanction must be determined on a case-by-case basis and should be "commensurate to the spoliating party's motive or degree of fault in destroying the evidence." Apple, Inc. v. Samsung Electronics Co., Ltd.., 888 F. Supp. 2d 976, 992-93 (N.D. Cal. 2012).  "[S]ome courts have denied requests for an adverse inference instruction even where the three-part test for spoliation was satisfied, upon concluding that the degree of fault and level of prejudice were insufficient to justify imposition of the sanctions."  Id. at 993 (citing Chin v. Port Auth. of New York & New Jersey, 685 F.3d 135, 162 (2d Cir. 2012)).

**1.     Obligation to Preserve at Time It was Destroyed**

Plaintiff argues that Cox was obligated to preserve relevant evidence on

September 13, 2010 when it first became aware of the litigation.  Defendant contends that when the original complaint was filed on September 13, 2010, the allegation that customers did not affirmatively request by name the set-top boxes, had nothing to do with telephone orders and did not place Cox on notice of an obligation to preserve sales call recordings.  Cox acknowledged that it did not require a formal recitation from its customers because it was not mandated by 47 U.S.C. § 543.  Therefore, any phone calls between CSRs and customers were not relevant at the time.

"A litigant is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or the subject of a pending discovery request." Wm. T. Thompson Co. v. General Nutrition Corp., 593 F.Supp. 1443, 1455 (C.D. Cal. 1984); In re Napster, Inc. Copyright Litigation, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) ("As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.")  "[O]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." Zubulake v. USB Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y. 2003).  "The scope of the duty to preserve extends to electronic documents, such as emails and back-up tapes." AAB Joint Venture v. United States, 75 Fed. Cl. 432, 441 (2007).

At the time that the original complaint was filed in September 2010, the interpretation of 47 U.S.C. § 753(f) was not clear and in dispute.  In 2010, Time Warner sought declaratory relief from the FCC to interpret the language and obligation for cable providers under 47 U.S.C. § 753(f).  On March 1, 2011, the FCC came out with a declaratory ruling that set the standard to be used under 47 U.S.C. § 753(f). (Dkt. No. 48-3, Morosoff Decl., Ex. A.)  On November 10, 2010, at the time the complaint in the instant case was already filed, Cox filed Comments before the FCC regarding Time Warner's declaratory relief petition. (Dkt. No. 48-3, Morosoff Decl.,

Ex. C.)  In those comments, Cox referenced the instant case, objected to Plaintiff's interpretation of 47 U.S.C. § 753(f) requiring customers requesting cable services to affirmatively itemize each equipment and services they wish to receive, and urged the FCC to clarify the scope of the negative option billing restriction.  (Id.)

The Court concludes that the duty to preserve arose when the complaint was filed in September 2010.  While Defendant may have objected to the legal grounds for Plaintiff's assertion in the original complaint that customers had to affirmatively request each equipment, Cox should have known that telephone recordings would have reasonably been requested during discovery as the ordering by the telephone appears to be the predominant way that customers request cable service.  While Defendant disputed Plaintiff's allegations, based on its Comments to the FCC, it also interpreted its own practice of informing customers of monthly equipment fees as being compliant with 47 U.S.C. § 753(f).  Therefore, Defendant should have reasonably known that the telephone recordings could have also eventually become relevant through an amended complaint.  The Court concludes that Defendant had an obligation to preserve the call recordings when the complaint was filed in September 2010.

### 2.    Culpable State of Mind

The "culpable state of mind" includes negligence.  Lewis v. Ryan, 261 F.R.D. 513, 521 (S.D. Cal. 2009) (citing Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108 (2d Cir. 2002)); see also Uribe v. McKesson, 08cv1285-DMS(NLS), 2010 WL 4235863, at *3 (E.D. Cal. Oct. 21, 2010).  A finding of "bad faith" is not a prerequisite.  Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1992).  "A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" Leon v. IDX Sys. Corp., 464 F.3d 951, 959 (9th Cir. 2006) (Plaintiff admitted deleting entire directories of personal files and that he wrote a program to "wipe" any deleted files from the unallocated space in the hard drive after having received a letter from defense counsel cautioning Plaintiff to preserve all data.).  Where the "culpable state

of mind" is bad faith, "that fact alone is sufficient to demonstrate relevance.  Zubulake, 220 F.R.D. at 220.  "By contrast, when the destruction is negligent, relevance must be proven by the party seeking the sanctions." Id.

Plaintiff argues that bad faith is not needed to show a culpable state of mind arguing that blatantly failing to preserve and erasing the backup tapes demonstrates the culpable state of mind.   Plaintiff argues, alternatively, that if bad faith is required to be proven, Defendant was willful and acted in bad faith in not implementing a litigation hold.   Defendant argues that the recordings were not destroyed in bad faith but the calls were overwritten pursuant to a routine business policy and because the servers had limited capacity.

Plaintiff has not shown that Defendant engaged in bad faith and  Defendant does not argue that it was not negligent in failing to preserve the back up tapes.   Because the Court concludes that Defendant had an obligation to preserve the call recording, Defendant was negligent in failing to preserve the back up tapes.  Thus, Defendant had a culpable state of mind.  Accordingly, Plaintiff must show that the recordings were relevant and would have supported Plaintiff's claims.  See Zubulake, 220 F.R.D. at 220.

### 3.	Relevant and Supportive of Party's Claim or Defense

Plaintiff argues that the deleted call recordings would have been relevant providing insight into Defendant's ordering practices going back into the Class Period, as they date from a time before Defendant had an opportunity to changes its practices in response to this lawsuit.  Defendant argues that the deleted call recordings would not have been relevant and supportive of Plaintiff' claims but would reveal just more of the same unsupportive recordings that have already been produced.

"The burden falls on the 'prejudiced party' to produce 'some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files.  Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 108 (2d Cir. 2001).

1    Without supporting evidence, Plaintiff speculates that the CSRs' practice of
2    taking cable orders has changed since litigation began.  In opposition, Defendant states
3    that it has not changed its CSR training regarding disclosing the price of equipment
4    with customers since 2005.  (Dkt. No. 54-7, Van Dusen Decl., Ex. 6, Ellis Depo. at
5    63:6-64:7.) ███████████████████████████████████████████████████
6    ███████████████████████████████████████████████ (Dkt. No. 61-2,
7    Van Dusen Decl., Foy Depo. at 43:16-44:7; 178:21-179:13 (██████████); Dkt. No. 61-
8    3, Van Dusen Decl., Ex. 4, Ellis Decl. ¶¶ 7-11 (under SEAL).)█████████████████
9    ██████████████████████████████ (Dkt. No. 54-23, Van Dusen Decl., Ex. 22
10   (stating at the left bottom of the page in small print "Rev 102808") (under SEAL).)

11   As discussed above, the call recordings already produced in this case are not
12   supportive of Plaintiff's claim.  Plaintiff cited only two call recordings out of 280 call
13   recordings produced to support her position.  Defendant has demonstrated that its
14   training practices have not changed since 2008.  Therefore, the Court concludes that
15   the deleted call recordings would not have been supportive of Plaintiff's claim.

16   Plaintiff has not demonstrated all three factors to support an adverse inference
17   sanction.  Accordingly, the Court DENIES Plaintiff's motion to spoliation sanctions
18   as to an adverse inference.

19   **B.    Preclusion**

20   Courts may also exclude evidence that given the spoliation, "would unfairly
21   prejudice an opposing party." Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.,
22   982 F.2d 363, 368 (9th Cir. 1992).  "A party must not be allowed to use evidence to
23   overcome the adverse inference, if it would leave the opposing party without sufficient
24   means to respond." Lewis, 261 F.R.D. at 522.  The preclusion sanction depends on the
25   extent to which Plaintiff was prejudiced by Cox's deletion of call recordings.

26   Because the Court concludes that Plaintiff has not shown that the deleted
27   recordings would not have likely been relevant and supportive of her claim, the Court
28   also concludes the Plaintiff was not prejudiced by Defendant's deletion of the call

recordings.  Accordingly, the Court DENIES Plaintiff's motion for spoliation sanctions as to preclusion.

**C.     Timeliness**

The Court also notes that Plaintiff knew as of May 24, 2011 when it deposed Mr. Wise that Defendant was still overwriting its call recordings.  However, Plaintiff failed to seek relief from the Court and did not file a motion for spoliation sanctions until February 2012, almost nine months later.   Instead, during May 24, 2011 to February 2012,  Plaintiff filed a motion to compel the call recordings and received 280 sampling of call recordings.  Having learned that only 10 of the 200 produced were relevant, she filed another motion to compel Defendant to comply with the court's order and to compel the production of an additional 400 call recordings.  Subsequently, Plaintiff withdrew her second motion to compel and instead filed a motion for spoliation sanctions.

Federal district courts have held that an unreasonable delay can render a spoliation motion untimely.  See Goodman v. Praxair Services, Inc., 632 F. Supp. 2d 494, 506–08 (D. Md. 2009) (spoliation motion "should be filed as soon as reasonably possible after discovery of the facts that underlie them motion."); see McEachron v. Glans, No. 98–CV–17(LEK/DRH), 1999 WL 33601543, at * 2 (N.D.N.Y.  June 8, 1999) (holding spoliation motion made two weeks after the close of discovery was timely); Glenn v. Scott Paper Co., 1993 WL 431161, * 17 n. 3 (declined to consider plaintiff's accusation that defendant withheld and destroyed relevant evidence because at no time did plaintiff raise these concerns during discovery or bring them to the attention of the magistrate); Media Comm. Inc v. Multimedia, Sign Up., Inc., No. 99 C 5009, 1999 WL 1212652, *4 (N.D. Ill. 1999) (denying motion to enter default judgment based on spoliation of evidence as spoilation sanction motion was untimely as plaintiff did not seek sanctions for four month).  Moreover, in this Court, a discovery dispute must be filed "within thirty (30) days of the date upon which the event giving rise to the dispute occurred."  (Magistrate Judge Gallo's Civil Chamber's Rules).

[10cv2133-GPC(WVG) ]

1    While timeliness of Plaintiff's motion for spoliation has not been raised by either

2  party, the Court alternatively denies the motion for spoliation as untimely.

3                                          **Conclusion**

4    Based on the above, the Court DENIES Plaintiff's motion for class certification

5  and DENIES Plaintiff's motion for spoliation sanctions.  Since the order cites to

6  documents that are sealed in this case, the Court DIRECTS the Clerk of Court to file

7  this order under SEAL.  The Clerk of Court shall also file a redacted version of the

8  order on its CM/ECF filing system.

9    IT IS SO ORDERED.

10 DATED:  May 21, 2013

11

12                              HON. GONZALO P. CURIEL
                              United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28